O
JS-6

# United States District Court
# Central District of California

| | |
|---|---|
| HERSHAL BRIDGES, III, et al.<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>DEALERS' CHOICE TRUCKAWAY SYSTEM, INC., et al.,<br><br>　　　　　Defendants. | Case No. 2:20-cv-01620-ODW (SKx)<br><br>**ORDER DENYING PLAINTIFFS' MOTION TO REMAND [8], GRANTING DEFENDANTS' MOTION TO TRANSFER [11], AND DENYING DEFENDANTS' MOTION TO DISMISS [10].** |

## I. INTRODUCTION

Plaintiffs Hershal Bridges, III and Jason C. Hurd, III (together, "Plaintiffs") filed this action in Los Angeles Superior Court against Defendants Dealers' Choice Truckaway System, Inc. and IronTiger Logistics, Inc. (together, "Defendants"). (Notice of Removal ("Notice"), Ex. A ("Compl."), ECF No. 1-1.) Defendants subsequently removed the case to this Court under the Class Action Fairness Act, 28 U.S.C. §§ 1332, 1441, 1446, and 1453 ("CAFA"). (Notice 3–14, ECF No. 1.)

Now pending before the Court are Plaintiffs' Motion to Remand for lack of subject matter jurisdiction and Defendants' Motions to Transfer to the United States District Court for the Western District of Missouri or, alternatively, to Dismiss for lack of personal jurisdiction. (Mot. to Remand ("MTR"), ECF No. 8; Mot. to Transfer

("MTT"), ECF No. 11; Mot. to Dismiss ("MTD"), ECF No. 10). For the reasons that follow, the Court **DENIES** Plaintiffs' Motion to Remand, **GRANTS** Defendants' Motion to Transfer, and **DENIES** Defendants' Motion to Dismiss for lack of personal jurisdiction as moot.[1]

## II.   BACKGROUND

Bridges and Hurd brought this class action against Defendants on behalf of themselves and the class they seek to represent. The proposed class (the "Class") consists of "all current and former drivers . . . who performed work for D[efendants] in the State of California while residing outside of the State." (Compl. ¶ 6.) Bridges resides in Florida, and Hurd resides in Texas. (Compl. ¶¶ 3–4.) Dealers' Choice is a Kansas corporation with its principal place of business in Missouri, and IronTiger is a Missouri corporation with its principal place of business in Missouri. (Notice 3.) Plaintiffs allege eight causes of action against Defendants: (1) Failure to Provide Required Meal Periods, (2) Failure to Provide Required Rest Periods, (3) Failure to Pay Minimum Wage, (4) Failure to Pay All Wages Due to Discharged and Quitting Employees, (5) Failure to Provide Accurate Itemized Wage Statements, (6) Failure to Indemnify Employees for Necessary Expenditures Incurred in Discharge of Duties, (7) Unlawful Wage Deductions, and (8) Unfair and Unlawful Business Practices. (Compl. ¶¶ 21-63.) Notably, Plaintiffs do not allege a specific number of total violations or a specific amount in total damages. (*See* Compl., Prayer for Relief.)

Defendants removed under CAFA and, alternatively, under 28 U.S.C. § 1332(a) based on Hurd's individual claims. Now, Plaintiffs move to remand, claiming that the aggregate amount in controversy ("AIC") does not meet the $5 million threshold required by CAFA, and that the individual AIC as to Hurd does not exceed $75,000 as required for traditional diversity jurisdiction. (*See generally* MTR.) Relevantly, Defendants filed a declaration by Rick Lantefield, the Treasurer and Chief Financial

---

[1] After carefully considering the papers filed in support of and in opposition to the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

Officer for both Defendants, to support their contentions that the AIC requirements are satisfied. (Decl. of Rick Lantefield ("Lantefield Decl."), ECF Nos. 1-2, 18-1.[2]) Defendants later filed their Motion to Dismiss for lack of personal jurisdiction (ECF No. 10) and Motion to Transfer the case (ECF No. 11).

### III. MOTION TO REMAND

First, the Court considers Plaintiffs' Motion to Remand. Plaintiffs argue that the case must be remanded because Defendants have failed to show by a preponderance of the evidence that the total AIC exceeds $5 million and that the AIC as to Hurd exceeds $75,000. (*See* MTR; Reply ISO MTR, ECF No. 23.) Because the Court concludes that jurisdiction exists under CAFA, the Court declines to assess the AIC specific to Hurd's individual claims.

### A. Legal Standard

Federal courts have subject matter jurisdiction only as authorized by the Constitution and Congress. U.S. Const. art. III, § 2, cl. 1; *see also Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). For instance, CAFA allows for federal jurisdiction over a purported class action when (1) there is an AIC exceeding $5 million, (2) at least one putative class member is a citizen of a state different from Defendants, and (3) the putative class exceeds 100 members. 28 U.S.C. § 1332(d)(2). However, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction [over a case removed from state court], the case shall be remanded." 28 U.S.C § 1447(c).

The first step in determining an AIC is to look to the complaint. *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). "Whether damages are unstated in a complaint, or, in the defendant's view are understated, the defendant seeking removal bears the burden to show by a preponderance of the evidence that the aggregate amount in controversy exceeds $5 million when federal jurisdiction is

---

[2] Although there are minor differences, these declarations are substantively identical; thus, the Court refers to them as a single declaration for purposes of this Order.

challenged." *Id.* When plaintiffs challenge the AIC asserted by the defendant, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the [AIC] requirement has been satisfied." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 88 (2014). The parties may prove the AIC by way of affidavits, declarations, or other summary-judgment type evidence. *Ibarra*, 775 F.3d at 1197 (citing *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)); *Ray v. Wells Fargo Bank, N.A.*, No. CV 11-01477 AHM (JCx), 2011 WL 1790123, at *6. (C.D. Cal. May 9, 2011).

In wage-and-hour cases such as this one, "violation rates are key to the calculations necessary to reach the [$5 million] amount-in-controversy figure CAFA requires." *Toribio v. ITT Aerospace Controls LLC*, No. 19-CV-5430-GW (JPRx), 2019 WL 4254935, at *2 (C.D. Cal. Sept. 5, 2019). A defendant attempting to establish an AIC by a preponderance of the evidence may do so by assuming the frequencies of violations, but those assumptions must be reasonable. *See Ibarra*, 775 F.3d at 1199. To that end, "the Ninth Circuit distinguishes between complaints of 'uniform' violations and those alleging a 'pattern and practice' of labor law violations." *Dobbs v. Wood Grp. PSN, Inc.*, 201 F. Supp. 3d 1184, 1188 (E.D. Cal. 2016) (citing *LaCross v. Knight Trans. Inc.*, 775 F.3d 1200, 1202 (9th Cir. 2015)). When a complaint alleges "uniform" violations, it might be reasonable to assume a 100% violation rate if "the plaintiff offers no competent evidence in rebuttal." *Id.* at 1188. But when a complaint alleges a "pattern and practice" of labor law violations, assuming a 100% violation rate is unreasonable; the assumed violation rate must be lower. *See id.*; *Ibarra*, 775 F.3d at 1198–99 ("[A] 'pattern and practice' of doing something does not necessarily mean *always* doing something." (emphasis in original)). For instance, numerous courts have found violation rates between 25% to 60% to be reasonable based on "pattern and practice" and "policy and practice" allegations. *Castillo v. Trinity Servs. Grp., Inc.*, No. 1:19-cv-01013-DAD (EPGx), 2020 WL 3819415, at *7 (E.D. Cal. July 8, 2020) (citing cases).

## B. Discussion

Defendants claim the total AIC is over $24 million. (Notice 12–13.) Although the Court does not completely agree with Defendants' calculations, the Court nonetheless finds that the aggregate AIC based on Plaintiffs' claims is at least $5 million, as explained below.

### *1. Failure to Indemnify Necessary Business Expenditures*

Plaintiffs' sixth cause of action alleges a failure to indemnify employees for "all business expenses and/or losses incurred in direct consequence of the discharge of their duties while working under the direction of D[efendants], including but not limited to expenses for uniforms, cell phone usage, and other employment-related expenses." (Compl. ¶ 47.)

Defendants do not purport to calculate the cost of uniforms or cell phone usage, but they estimate that Class members spent $1,861,916 on fuel. (Notice 11–13.) To reach this number, Defendants submit declaration evidence that at least 1,997 Class members collectively drove 3,817,484 miles within California during the relevant time period. (Lantefield Decl. ¶ 4.) Additionally, "fuel tax records for the 4-year period of 2016-2019 show an average miles per gallon for all contractors under contract with the company of 6.93 MPG." (Lantefield Decl. ¶ 9.) Consequently, Defendants reason that Class-member drivers purchased approximately 550,863 gallons of fuel for the miles they drove in California during the relevant time period. (Notice 12.) Defendants then cite statistics from the U.S. Energy Information Administration to assert that the average cost of diesel fuel in California between 2016–2019 was $3.38 per gallon. (Notice 12.) Thus, Defendants estimate that the Class-member drivers spent $1,861,916 (550,863 gallons multiplied by $3.38 per gallon) on diesel fuel for the purposes of driving truckloads through California. (Notice 12.)

Now, Plaintiffs argue that Defendants' calculations must be reduced to reflect only work performed in California and, in any event, that Defendants' reliance on a 100% violation rate is unreasonable. (*See* MTR 2.) Plaintiffs also contend that the

1  AIC should not include any reimbursements for fuel because the Complaint does not
2  place "fuel costs" in controversy.  (Reply ISO MTR 13.)  In particular, Plaintiffs urge
3  the Court to consider *Henry v. Central Freight Lines, Inc.*, 692 F. App'x 806, 807 (9th
4  Cir. 2017), as an example of how *not* to rule.  (Reply ISO MTR 13.)  Defendants
5  counter by explaining that their fuel-cost calculations *are* limited to reflect only miles
6  driven in California, but they do not need to be so limited because Plaintiffs' claims
7  are not either, and Plaintiffs' claim for failure to indemnify necessary business
8  expenses *does* allege a 100% violation rate.  (Opp'n to MTR 7, 11–12, ECF No. 18.)
9  Defendants are correct.

10  In fact, closer examination of *Henry* reveals far more similarities than
11  differences.  In *Henry*, a group of truck drivers brought a class action suit against their
12  employer, seeking, among other things, "reimbursement for all costs and expenses of
13  owning and/or leasing, repairing, maintaining, and fueling the trucks and vehicles that
14  the truck drivers drove while conducting work."  692 F. App'x at 807 (internal
15  quotation marks and brackets omitted).  There, the defendant had removed the case to
16  federal court under CAFA; the district court had remanded based on an insufficient
17  AIC after finding that certain claims failed as a matter of law; and the Ninth Circuit
18  reversed the district court's remand.  *Id.*  The *Henry* court explained, "The amount in
19  controversy is simply an estimate of the total amount in dispute, and is a concept
20  distinct from the amount of damages ultimately recoverable."  *Id.* (alteration in
21  original) (internal quotation marks and citations omitted).  Thus, in *Henry*, the court
22  simply looked to the complaint which sought reimbursement for "all costs and
23  expenses of . . . leasing the trucks" to conclude that "lease-related payments ha[d]
24  been placed into controversy and [we]re properly considered for purposes of CAFA
25  jurisdiction."  *Id.* (internal quotation marks omitted).  Notably, in addition to the costs
26  of leasing the trucks, the Ninth Circuit in *Henry* also counted allegedly unreimbursed
27  fuel costs as part of the AIC, based on a declaration from the defendant's Vice
28  President and Chief Financial Officer.  *Id.*

The facts of this case are not so different. Plaintiffs are truck drivers suing Defendants for the same types of labor law violations at issue in *Henry*, and Defendants submit declaration evidence to substantiate their calculations for the amount of fuel costs placed in controversy by Plaintiffs' claims. Plaintiffs argue that many of Defendants' calculations are not recoverable as a matter of law because they are not limited to the work Plaintiffs performed in California, and that they should, therefore, be discounted for AIC purposes. But for the same reasons explained in *Henry*, whether Plaintiffs can ultimately recover damages for violations occurring outside of California makes no difference in calculating the AIC when the Complaint includes no such limitation. Although Plaintiffs limit the putative class to drivers who at some point drove through California, they seek non-reimbursement damages for "all business expenses" throughout the course of their employment. As Plaintiffs do not limit their damages to violations associated with their work within California, the AIC is not so limited; it is as broad as the Complaint's allegations. *See id.*

Plaintiffs argue that, unlike in *Henry*, they do not "specifically" identify fuel in their sixth claim for reimbursement of business expenses. (Reply ISO MTR 13; *see* Compl. ¶ 47.) But this distinction makes little difference because Plaintiffs seek "*all* business expenses . . . incurred in direct consequence of the discharge of their duties while working under the direction of D[efendants]," and the Class members are defined as "current and former drivers . . . who performed work for D[efendants] in the State of California while residing outside of the State." (Compl. ¶¶ 6, 47 (emphasis added).) Surely, fuel costs are normally incurred business expenses for truck drivers. Indeed, cases like *Henry* evidence that fuel costs are often the subject of reimbursement claims under California Labor Code section 2802 between similarly situated parties. *See, e.g.*, *Henry*, 692 F. App'x at 807; *LaCross*, 775 F.3d at 1202–1203 (reversing the district court's remand because defendants had reasonably calculated the amount in controversy based on fuel costs).

1          Ultimately, if Plaintiffs were to succeed on their sixth claim, Defendants would
2   need to reimburse them for all expenditures incurred in direct consequence of the
3   discharge of their duties as truck drivers, including fuel costs.  *See Henry*, 692 F.
4   App'x at 807 (quoting *LaCross*, 775 F.3d at 1202–03).  Although Plaintiffs argue that
5   Defendants' estimates are too high, their arguments are legally unsupported, and
6   Plaintiffs do not specify what the actual number should be.  Moreover, Defendants'
7   calculations appear to be substantiated by credible declaration testimony.
8   Accordingly, the Court finds that Defendants have shown by a preponderance of
9   evidence that the total AIC comprises at least **$1,861,916**.

            *2.     Meal Period and Rest Break Premiums*

           Plaintiffs' first and second causes of action seek meal period and rest break
premiums, respectively.  (Compl. ¶¶ 21–29.)  As to these claims, Defendants submit
declaration evidence that putative class members moved a total of 216,938 truckloads
in California in the relevant time period and that each load took at least one day to
move.  (Lantefield Decl. ¶¶ 3–4.)  Thus, Defendants estimate that 216,938 missed
meal periods and missed rest breaks are in controversy.  (Notice 9–10; Lantefield
Decl. ¶ 4.)  Using an ostensibly conservative rate equal to the current California
minimum wage, Defendants multiply the total number of potential missed meal
periods and rest breaks by $12/hour to reach amounts in controversy of $2,603,256 for
meal period premiums and $2,603,256 for rest break premiums.  (Notice 9–10.)

           Plaintiffs argue that Defendants unreasonably rely on 100% violation rates to
reach these numbers.[3]  (*See* MTR 8, 10–11.)  On this point, Plaintiffs are correct
because Plaintiffs do not allege uniform violations of missed meal periods or rest
breaks.  Rather, they allege that Defendants deprived them of meal periods and rest

---

[3] Plaintiffs also generally protest these calculations because Defendants base them on the entire time that Class members worked for Defendants, rather than focusing only on the time worked in California.  (*See* MTR 5.)  However, Defendants' calculations for meal period and rest break premiums *do* appear to be limited to just the work performed in California.  (Notice 9–10; Lantefield Decl. ¶¶ 3–4.)  Thus, this argument fails.

8

breaks "as part of . . . policies and practices to deprive their non-exempt employees all wages earned and due." (Compl. ¶¶ 22, 27.) Based on the Complaint's language, Defendants' proposed calculations are unacceptable because they rely on an unreasonable assumption of a 100% violation rate. *See Ibarra*, 775 F.3d at 1198–99; *Dobbs*, 201 F. Supp. 3d at 1188–89.

Nevertheless, Plaintiffs appear to concede that 50% would be a reasonable violation rate. (*See* MTR 11 (suggesting "application of a more reasonable violation rate, like 50% (rather than 100%).") Defendants appear to have agreed to the 50% violation rate as well. (*See* Opp'n to MTR 7–8 (applying a 50% violation rate to calculate a reduced AIC).) The Court agrees that 50% is a reasonable violation rate. *See Elizarraz v. United Rentals, Inc.*, No. 2:18-CV-09533-ODW (JCx), 2019 WL 1553664, at *3–4 (C.D. Cal. Apr. 9, 2019) (finding a 50% violation rate for missed meal periods and a 25% violation rate for missed rest periods reasonable based on "pattern and practice" allegations); *Marquez v. Toll Global Forwarding (USA) Inc.*, No. 2:18-cv-03054-ODW (ASx), 2018 WL 3046965, at *3 (C.D. Cal. June 19, 2018) (accepting an alternately offered 50% violation rate of meal and rest break penalties based on language that violations occurred "often"). Thus, considering the parties' agreement and Defendants' declaration testimony, the Court finds that Defendants have shown by a preponderance of the evidence that the AIC comprises an additional **$2,603,256** based on meal period and rest break premiums, together.

### 3. *Waiting Time Penalties*

Plaintiffs allege with their fourth claim that Defendants "willfully failed to pay accrued wages and other compensation" to Plaintiffs and that "[a]s a result, P[laintiffs] . . . are entitled to all available statutory penalties, including the waiting time penalties provided in California Labor Code § 203." (Compl. ¶¶ 37–38.) As for this claim, Defendants submit declaration evidence that at least 903 putative Class members terminated their contracts within the relevant time period and within the applicable two-year statute of limitations. (Lantefield Decl. ¶ 6.) Multiplying

12 dollars per hour by 8 hours by 30 days by 903 drivers, Defendants assert that the AIC as to wage statement penalties equals $4,555,750. (Notice 10.)

Plaintiffs contend that it is unreasonable to assume a 100% violation rate or a 30-day maximum violation in each instance of waiting time penalties. (*See* MTR 6–7.) Indeed, Plaintiffs may be correct. Although Plaintiffs seek "all available statutory penalties," they do not necessarily allege that Defendants owe waiting time penalties for all employees to whom such penalties could possibly apply. (Compl. ¶ 39.) The Court need not decide this issue, however, because again, Plaintiffs appear to concede that a 50% violation rate would be reasonable (*see* MTR 11), and Defendants appear to agree to the 50% deduction in their calculations (*see* Opp'n to MTR 7–8). Once more, the Court finds that a 50% violation rate would be reasonable. *See Elizarraz*, 2019 WL 1553664, at *3–4; *Marquez*, 2018 WL 3046965, at *3. Thus, in light of the parties' agreement and based on Defendants' declaration evidence, the Court finds that Defendants have shown by a preponderance of the evidence that the AIC comprises at least an additional **$2,600,640** based on waiting time penalties.

In summary, the Court concludes that Plaintiffs' meal period, rest break, waiting time, and reimbursement claims satisfy CAFA's amount in controversy requirements because $1,861,916 (for failure to indemnify business expenses) plus $2,603,256 (for meal period and rest break premiums) plus $2,600,640 (for waiting time penalties) exceeds $5 million. Since these claims alone put the total AIC over the jurisdictional threshold, the Court declines to analyze the AIC as to the remainder of Plaintiffs' claims. As all other jurisdictional requirements are satisfied, the Court **DENIES** Plaintiffs' Motion to Remand. (ECF No. 8.)

### IV.   MOTION TO TRANSFER

The Court now turns to Defendants' Motion to Transfer the case to the United States District Court for the Western District of Missouri.

### A. Legal Standard

A district court may transfer an action to any district or division where (1) the transferee court is one where the action might have been brought, and (2) the parties' and witnesses' convenience, as well as the interests of justice, favor transfer. 28 U.S.C. § 1404(a); *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414 (9th Cir. 1985); *Metz v. U.S. Life Ins. Co.*, 674 F. Supp. 2d 1141, 1145 (C.D. Cal. 2009). As to the first step, the transferee court is one where the action might have been brought if "subject matter jurisdiction, personal jurisdiction, and venue would have been proper if the plaintiff had filed the action in the district to which transfer is sought." *Metz*, 674 F. Supp. 2d at 1145. As to the second step, the movant must present strong grounds for transferring the action; otherwise, the plaintiff's choice of venue will not be disturbed. *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). Additionally, the Ninth Circuit has noted that a court deciding whether to transfer may consider factors such as:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000). The Court has "broad discretion to transfer a case to another district where venue is also proper." *Amini Innovation Corp. v. JS Imps., Inc.*, 497 F. Supp. 2d 1093, 1108 (C.D. Cal. 2007); *see also Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979) ("Weighing of the factors for and against transfer involves subtle considerations and is best left to the discretion of the trial judge.").

**B.  Discussion**

Clearly, this action could have been brought in Missouri.  The transferee court has subject matter jurisdiction for the reasons explained above, and it has general personal jurisdiction over both Defendants because they are both headquartered in Missouri.  (*See* MTT 6.)  Venue is proper in the Western District of Missouri because Defendants are headquartered in Independence, Missouri, which is within the transferee court's district, and "all [D]efendants are residents of the State in which the district is located."  *See* 28 U.S.C. §§ 1391(b)(1), 1391(c)(2).  The transferee court is one in which the action might have been brought.  Consequently, the decision to transfer turns on the convenience to the parties, convenience to the witnesses, and the interests of justice.  *See Young Props. Corp. v. United Equity Corp.*, 534 F.2d 847, 852 (9th Cir. 1976).

*1.  Convenience to the Parties*

Plaintiffs claim it would be more difficult for them to travel to Missouri than California, and they contend that transferring the case would impermissibly shift the inconvenience of litigating in a foreign jurisdiction from Defendants to Plaintiffs.  (Opp'n to MTT 21, ECF No. 20.)  Defendants argue that Plaintiffs' argument relies on self-serving declarations and that transferring the case to Missouri would result in greater convenience to all parties because both Defendants are headquartered in Missouri, and as residents of Florida and Texas, both named Plaintiffs are closer to Missouri than California.  (*See* Reply ISO MTT 6–7, ECF No. 22.)  The Court agrees with Defendants.

Defendants assert that they execute contracts, dispatch orders, and pay contractors from their headquarters in Missouri, and that they have "no California facilities, no California employees, no California bank accounts, and [are] not registered to do business in California."  (MTT 2–3; 2d Decl. of Rick Lantefield ("2d Lantefield Decl.") ¶¶ 3–5, 7, ECF No. 11-2; Decl. of Dave Bross ("Bross Decl.") ¶¶ 2–3, ECF No. 11-3; Decl. of John Hummel ¶¶ 3–4, ECF No. 11-4.)  Plaintiffs

1  attempt to rebut this by claiming that Defendants operate delivery "hubs" across the
2  country, including in California, where drivers deliver truckloads of vehicles as part of
3  their job duties. (Opp'n to MTT 9–11.) Defendants explain, however, that the alleged
4  "hubs" are in fact operated by a third party, and while Defendants do instruct drivers
5  to deliver vehicles to those "hubs," their competitors do too, and none of the hub
6  operators are employees or agents of Defendants. (Reply ISO MTT 2–3; Decl. of
7  Andy Glass ¶¶ 2–5, ECF No. 22-1.) Considering these circumstances, the Court is
8  satisfied that it would be more convenient for Defendants to litigate this action in
9  Missouri, where their headquarters and employees are located.

10 For their part, Plaintiffs assert that Missouri is a more inconvenient venue than
11 California because they are "acquainted with the airports, flights and hotels [in
12 California] and believe it would be easier" to travel to California, as "the various
13 flight options into and out of the major airport of LAX will make traveler [sic] there
14 far more affordable than flights to smaller airports." (Decl. of Hershal Bridges, III
15 ("Bridges Decl.") ¶ 20, ECF No. 20-1; Decl. of Jason C. Hurd, III ("Hurd Decl.")
16 ¶ 19, ECF No. 20-2.) The Court finds Plaintiffs' declarations to be self-serving and
17 speculative. Plaintiffs' belief that flights to Los Angeles would be cheaper than flights
18 to Kansas City—despite the fact that they reside closer to Kansas City—is not enough
19 to outweigh the increased convenience for Defendants that would result from a
20 transfer. Moreover, the Court disagrees with Plaintiffs' argument that transfer would
21 shift the inconvenience of litigating in a foreign jurisdiction from Defendants to
22 Plaintiffs because *no* Plaintiffs reside in California. (*See* Compl. ¶ 6.) Accordingly,
23 the Court finds that a balancing of convenience to the parties favors transfer.

24     *2. Convenience to the Witnesses*

25 Defendants argue that the convenience to the witnesses must weigh in favor of
26 transfer because all company witnesses are located in Missouri, and no witnesses—
27 neither Defendants' employees nor any of the putative Class members—are located in
28 California. (MTT 8; Reply ISO MTT 7.) Plaintiffs counter that Defendants fail to

identify any Class member or non-employee witness who resides in Missouri.  (Opp'n to MTT 7.)  Plaintiffs further claim that "Defendants' managers at their Hubs in Fontana and Sacramento [and other customers] would have intimate knowledge of the work . . . [that] drivers performed in California if called as witnesses," and Plaintiffs "recall that the manager in Fontana was a man named Sal and that the manager in Sacramento was named Tyrone."  (Bridges Decl. ¶ 18; Hurd Decl. ¶ 17; *see also* Opp'n to MTT 10–11.)

Although it is likely true that customer witnesses in California would be inconvenienced by a transfer, Defendants' company witnesses in Missouri would undoubtedly be inconvenienced by denying transfer.  Additionally, the Court notes that in a wage-and-hour case such as this, employee witnesses who dealt with hiring, dispatch, and payroll would seem to provide more critical information than customers to whom cars were delivered in California.  Indeed, Plaintiffs may have acted as the face of Defendants' business when delivering vehicles to customers in California (*see* Bridges Decl. ¶¶ 13–14; Hurd Decl. ¶¶ 12–13), but Plaintiffs fail to adequately explain how those customers could provide relevant testimony as to the terms of the contractual hiring relationship between Defendants and Plaintiffs (*see* Reply ISO MTT 7).  Accordingly, the Court finds that a balancing of convenience to the relevant witnesses also favors transferring the action.

3. *The Interests of Justice*

Plaintiffs correctly point out that, in motions to transfer venue, the plaintiffs' choice of forum is typically given considerable weight.  But "when an individual brings a derivative suit or represents a class, the named plaintiff's choice of forum is given less weight."  *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987).  "In such circumstances, the amount of weight to be accorded to plaintiffs' choice of forum depends on the extent of the parties' contacts with the chosen venue, including those relating to plaintiffs' claim for relief."  *Parr v. Stevens Transport, Inc.*, No. C 19-02610-WHA, 2019 WL 4933583, at *3 (N.D. Cal. Oct. 7, 2019) (citing *Pac. Car &*

*Foundry Co. v. Pence*, 403 F.2d 949, 954 (9th Cir. 1968) (granting transfer because, on facts similar to those presented here, the factors favored transfer). "[D]eference to the plaintiff's choice of forum is diminished if . . . the forum is not the primary residence of either the plaintiff or defendant." *Catch Curve, Inc. v. Venali, Inc.*, No. 05-CV-04820-DDP (AJWx), 2006 WL 4568799, at *2 (C.D. Cal. Feb. 27, 2006).

Here, the Court finds *Parr* instructive. As in *Parr*, Defendants have contacts with the forum state as they regularly conduct business nationwide, including in California. (MTT 2–3.) The Court also assumes without deciding that Plaintiffs' claims, which are brought under California law, arise directly from Defendants' local contacts with the forum state. *See Parr*, 2019 WL 4933583, at *4. However, as was the case in *Parr*, "[P]laintiffs' own contacts with the forum are dubious" because the Class is defined to *exclude* any drivers who reside in California (Compl. ¶ 6). *See id.* Therefore, none will be "deprived of the presumed advantages of [their] home jurisdiction." *Id.* at *4 (quoting *Koster v. Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947)).

Indeed, the instant case is fundamentally similar to *Parr*. Here, "Plaintiffs' best point is that this case presents an issue of legitimate importance to California, namely the extent to which out-of-state drivers can benefit from California's labor laws when they drive through our state." *Id.* Surely, "California has an interest in making sure its laws are observed for work done in California, even if it is only a brief span in a long over-the-road haul." *Id.* But the Court must consider Missouri's interest in adjudicating the matter as well. In this case, Defendants are headquartered in Missouri, and they hire drivers from many different states. (MTT 1–3; *See* 2d Lantefield Decl. ¶¶ 3, 5–7; Bross Decl. ¶ 3.) Plaintiffs seek to represent a Class of all of Defendants' drivers who do *not* reside in California but who have driven in California as part of their work. (Compl. ¶ 6.) The gravamen of Plaintiffs' claims is that two Missouri companies violated California labor laws when they hired non-Californian drivers—e.g., Floridian and Texan drivers—to deliver vehicles across the

country, sometimes in California. (*See generally* Compl.) Where all of Defendants' employees and records are located in Missouri and the convenience to the parties and witnesses favors transferring the case, this Court cannot say that California clearly has the greater interest in adjudicating this case. Furthermore, even though this Court may be more familiar with applying California law, there is no reason why a district court sitting in Missouri would be incapable of doing the same. *See Atl. Marine Const. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 67 (2013) ("[F]ederal judges routinely apply the law of a State other than the State in which they sit.").

Accordingly, upon balance of the relevant circumstances, including the convenience to the parties and witnesses and the interests of justice, the Court **GRANTS** Defendants' Motion to Transfer the case to the Western District of Missouri. (ECF No. 11.) Consequently, the Court **DENIES** Defendants' Motion to Dismiss for lack of personal jurisdiction as moot. (ECF No. 10.)

## V. CONCLUSION

In summary of the foregoing, the Court **DENIES** Plaintiffs' Motion to Remand (ECF No. 8), **GRANTS** Defendants' Motion to Transfer to the United States District Court for the Western District of Missouri (ECF No. 11), and **DENIES** Defendants' Motion to Dismiss as moot (ECF No. 10). All dates and deadlines are hereby **VACATED**. The Clerk of the Court shall close this case.

**IT IS SO ORDERED.**

August 24, 2020

_____
          **OTIS D. WRIGHT, II**
     **UNITED STATES DISTRICT JUDGE**